UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GEORGE WEST,

    Plaintiff,

v.                                             Case No. 20-10238

PAUL LAGALO,

    Defendant.
_____/

# OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff George West brings this action under 42 U.S.C. § 1983 alleging violations of the Eighth Amendment. (ECF No. 1.) He alleges that Defendant Paul Lagalo, a corrections officer at the Saginaw County Jail, was deliberately indifferent to Plaintiff's serious medical needs, resulting in surgery and medical complications. (*Id.*)

Discovery is complete, and Defendant has moved for summary judgment. (ECF No. 27.) The matter has been thoroughly briefed. (ECF Nos. 30, 31.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, Defendant's motion will be denied.

## I. BACKGROUND

The following facts are taken from the record established by both parties. Those noted as established are either agreed upon or lack contradictory evidence. Others may be noted as assumed true in the light most favorable to the non-moving party.

On May 10, 2018, Plaintiff was transferred to the Saginaw County Jail to complete a sentence for various firearm offenses, including being a felon in possession

of a firearm. (ECF No. 27, PageID.150; ECF No. 27-2, PageID.169.) Defendant worked at the Saginaw County Jail as a supervisory correctional officer. (ECF No. 27, PageID.153; ECF No. 30-3, PageID.293.)

The Saginaw County Jail has an electronic "kite" system by which inmates can register official complaints, report grievances, and request medical attention. (ECF No. 27, PageID.150-51; ECF No. 27-2, PageID.170.) While incarcerated at the Saginaw County Jail, Plaintiff submitted 14 kites. (ECF No. 27, PageID.151; ECF No. 27-3; ECF No. 27-8.) He made various requests, such as asking to be moved to a different jail and requesting clothing and mail. (*See* ECF No. 27-3.) Part of Defendant's responsibilities was to review inmate kites filed during his shift. (ECF No. 27-7, PageID.222; ECF No. 30, PageID.249.) Defendant responded to two of Plaintiff's kites. The first, on May 30, 2018, asked that prison authorities move him to a jail in Genesee County. (ECF No. 27-3, PageID.192.) Defendant responded to the kite stating that, when Genesee County confirms Plaintiff's sentence is complete, "we will give [Plaintiff] a ride to the Genesee County jail that night" if Plaintiff cannot obtain a ride himself. (*Id.*) Also on May 30, 2018, Plaintiff submitted the second kite stating that he was wrongfully punished for being involved in a prison fight and that he was mourning the loss of his father. (*Id.*, PageID.193.) Defendant responded stating that he "[sent] down [an] officer . . . to talk to [Plaintiff]" and would "have [a] mental health [professional] talk to [Plaintiff] as well." (*Id.*)

Plaintiff submitted four kites in August 2018. Defendant worked the night shift between 6:00 p.m. and 6:00 a.m. and did not respond to any of Plaintiff's kites submitted that month. (ECF No. 27-7, PageID.224; ECF No. 27-3, PageID.201-04.) On August 13, 2018, Plaintiff submitted two kites, requesting first a Koran and second a t-

2

shirt because his cell was cold. (ECF No. 27-3, PageID.203-04.) Plaintiff wrote no further kites between August 13 and August 20, 2018. (ECF No. 27-3; ECF No. 27-8.) None of Plaintiff's kites at the Saginaw County Jail stated that he had either pain of any kind or any serious medical condition. (ECF No. 27, PageID.151; ECF No. 27-3; ECF No. 27-8.)

On August 20, 2018, the Saginaw County Jail records indicate that Defendant went "on round" at 2:00 a.m. (ECF No. 27-5, PageID.208.) Medical records at the jail state that Plaintiff received an emergency examination at 2:30 a.m. for "intense pain . . . [in his] lower abdomen" that "started about 21:00." (ECF No. 27-4, PageID.206.) Jail records further indicate that Defendant received an official request at 4:04 a.m. to take Plaintiff to the emergency room. (ECF No. 27-5, PageID.208-09.) Defendant immediately approved the request, and emergency medical transportation arrived to take Plaintiff to the hospital at 4:38 a.m. (*Id.*, PageID.209.)

At the hospital, Plaintiff was diagnosed with a perforated bowel and underwent surgery. (ECF No. 27-6, PageID.211-12.) Plaintiff informed medical professionals treating him at the hospital that he had "abdominal pain within the last month," and "during the . . . week [prior to his hospitalization,] this pain worsened and became severe yesterday[,] prompt[ing] him to seek . . . medical attention." (ECF No. 27-6, PageID.215.) In addition, Plaintiff told hospital personnel that he had never before experienced the level of pain he felt the night of August 19, 2018. (ECF No. 27-6, PageID.215; ECF No. 27-2, PageID.174.) Plaintiff later confirmed that, because he wanted medical professionals "to treat [him] appropriately," "[the] information [he] provided [at the hospital] . . . was truthful and accurate." (ECF No. 27-2, PageID.174.) In

3

a deposition, Plaintiff stated that he had a colostomy bag as a result of the surgery and was in the hospital for "about a month." (*Id.*, PageID.175.)

Plaintiff also testified that, since he arrived at the Saginaw County Jail, he informed "Sergeant Lagalo" that he was experiencing pain "every time [Defendant] was on shift," and at least "five times." (ECF No. 27-2, PageID.173, 176.) Plaintiff identified "Sergeant Lagalo" as a "bald headed" white male "about in his 30s." (*Id.*, PageID.173.) Defendant Lagalo was in his 50s and has never been bald. (ECF No. 27-7, PageID.224.)

Plaintiff filed suit against Defendant and another corrections officer on January 30, 2020. (ECF No. 1.) The parties engaged in a period of discovery until March 22, 2021. On March 31, 2021, Plaintiff dismissed his claim against the other corrections officer, (ECF No. 26), and on April 20, 2021, Defendant moved for summary judgment. (ECF No. 27.)

## II. STANDARD

To prevail on a motion for summary judgment, a movant must show—point out—that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

### III. DISCUSSION

Plaintiff alleges that Defendant violated the Eighth Amendment by failing to provide him with adequate medical care for his perforated bowel prior to August 20, 2018. Defendant moves for summary judgment arguing that he is entitled to qualified immunity. (ECF No. 27.)

Qualified immunity "shield[s] officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a government official asserts qualified immunity, courts apply a two-part test: "(1) whether the alleged facts . . . show that the official's conduct violated a constitutional right, and (2) whether that constitutional right was clearly established." *Rieves v. Town of Smyrna,* 959 F.3d 678, 695 (6th Cir. 2020). "A right is clearly

5

established when a reasonable officer would know—in the given situation and with the information known to him at the time—that his conduct violated that right." *Id.* Stated another way, "[i]f reasonable officials could disagree as to whether the conduct at issue was lawful, then qualified immunity applies." *Id.*

The court will address the two elements of qualified immunity in turn.

### A. Violation of a Constitutional Right

Government indifference to inmate medical needs can "constitute an unnecessary and wanton infliction of pain or . . . be repugnant to the conscience of mankind" in violation of the Eighth Amendment and its bar on cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (citations removed). To succeed, Plaintiff must prove both an objective and subjective component. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

For the objective component, Plaintiff must show "a sufficiently serious medical need," in that he "is incarcerated under conditions imposing a substantial risk of serious harm." *Miller v. Calhoun Co.*, 408 F.3d 803, 812-13 (6th Cir. 2005) (citations removed). "[It] further requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency—that is, it is not one that today's society chooses to tolerate." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). For the subjective component, Petitioner must

prove "a sufficiently culpable state of mind in denying medical care . . . evidenc[ed] [by] deliberateness tantamount to intent to punish." *Miller*, 408 F.3d at 812-13 (citations removed). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Villegas*, 709 F.3d at 569 (quoting *Farmer*, 511 U.S. at 837).

"[I]t is well-settled that qualified immunity must be assessed in the context of each individual's specific conduct." *Stoudemire v. Mich. Dept. of Corr.*, 705 F.3d 560, 570 (6th Cir. 2013) (quoting *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012)). "Accordingly, the question of whether an official possessed the requisite knowledge and culpable mental state to sustain a deliberate indifference claim 'must be addressed for each officer individually.'" *Id.* (quoting *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)); *Bishop v. Hackel*, 636 F.3d 757, 769 (6th Cir. 2011) (holding that a district court erred when it did not conduct "an individualized assessment of the knowledge of [each] defendant").

In the motion for summary judgment, Defendant does not contest the objective element of Plaintiff's deliberate indifference claim. (ECF No. 27, PageID.156-58.) Instead, he argues that because his "only involvement in Plaintiff's medical care was providing approval for Plaintiff's transfer to [the hospital]" the morning of August 20, 2018, Plaintiff cannot demonstrate the subjective element. (*Id.*, PageID.158.) Defendant also argues that Plaintiff "misidentified [him]." (*Id.*)

Substantial evidence supports Defendant's position that he was not made aware of a serious health condition on the part of Plaintiff that was sufficient to show that Defendant was "aware of facts from which the inference could be drawn that a

7

substantial risk of serious harm exist[ed], and [Defendant] . . . dr[ew] the inference."
*Villegas*, 709 F.3d at 569. Defendant's job responsibilities included reviewing prisoner kites. (ECF No. 27-7, PageID.222; ECF No. 30, PageID.249.) Yet undisputed evidence shows that of the 14 kites Plaintiff submitted while at the Saginaw County Jail, none discussed pain in his abdomen or elsewhere. (ECF No. 27, PageID.151; ECF No. 27-3; ECF No. 27-8.) In fact, other than a single request for toenail clippers, Plaintiff's health and medical conditions were not once mentioned in his kites. (*See* ECF No. 27-3, PageID.200.) Defendant reviewed two of Plaintiff's kites, and by all accounts, Defendant responded appropriately. (ECF No. 27-3, PageID.192-93 (responding to Plaintiff's kite that stated Plaintiff was mourning his father's death by sending a mental health professional to see him).) Thus, the uncontested record discussed thus far supports Defendant's position that Plaintiff gave no notice through the official complaint and grievance kiosk system at the Saginaw County Jail sufficient to make Defendant aware that Plaintiff was experiencing pain, severe or otherwise.

In addition, medical records, which Plaintiff testified were "truthful and accurate," (ECF No. 27-2, PageID.174), prove that Plaintiff reported that he began experiencing "intense" and "severe" pain around 9:00 p.m. on August 19, 2018. (ECF No. 27-4, PageID.206; ECF No. 27-6, PageID.215.) It is undisputed through jail records that Defendant went "on round" at 2:00 a.m. on August 20, 2018, (ECF No. 27-5, PageID.208), and at 2:30 a.m. Plaintiff was seen by medical professionals at the facility. (ECF No. 27-4, PageID.206.) Uncontested jail records also indicate that Defendant received a request to transport Plaintiff to the hospital at 4:04 a.m., and emergency

8

medical transportation arrived to take Plaintiff to the hospital at 4:38 a.m. (ECF No. 27-5, PageID.208-09.)

Finally, although Defendant did not specifically recall Plaintiff, Defendant testified that, in instances where an inmate has informed him in person of the need for medical attention, Defendant "never ignore[d] them." (ECF No. 27-7, PageID.224.) Defendant also stated that his custom and practice was to "radio to medical and advise them that an inmate is requesting to see them." (*Id.*)

Nonetheless, Plaintiff testified that prior to August 20, 2018, he informed Defendant, in part through speaking to Defendant in person while Defendant was on rounds checking jail cells, that Plaintiff was experiencing "acute abdominal pain."[1] (ECF No. 27-2, PageID.172-73, 176.) According to Plaintiff, he informed Defendant of the pain at least "five times," and "every time [Defendant] was on shift." (*Id.*) Plaintiff testified that Defendant ignored his complaints and "nothing ever happened." (*Id.*)

Plaintiff attaches no documentation, and no jail or medical records, that corroborate his account of events. No testimony from Defendant, other corrections officers, medical personnel, or fellow inmates in the record support Plaintiff's testimony. Plaintiff's statement that he informed Defendant that he was experiencing acute abdominal pain prior to August 20, 2018, is in conflict with official records of Plaintiff's kites, (ECF No. 27, PageID.151; ECF No. 27-3; ECF No. 27-8), Plaintiff's statements to medical professionals showing that his acute pain began the night of August 19, 2018, (ECF No. 27-4, PageID.206; ECF No. 27-6, PageID.215), and Defendant's sworn

---

[1] Plaintiff, in his deposition, did not specify the exact dates and times that he claims to have notified Defendant of abdominal pain. (*See* ECF No. 27-2, PageID.172-73, 176.)

testimony on his custom and practice of responding to oral medical complaints. (ECF No. 27-7, PageID.224.) Plaintiff's statement also conflicts with his own testimony. He described "Sergeant Lagalo," the officer to whom he purportedly made complaints, as a "bald headed" white male "about in his 30s." (ECF No. 27-2, PageID.173.) Plaintiff now does not dispute that Defendant was in his 50s and has never been bald. (ECF No. 27-7, PageID.224.)

Despite all this evidence in support of Defendant's position, Plaintiff specifically identified Defendant, "Sergeant Lagalo," as a correctional officer he informed numerous times of "acute abdominal pain."[2] (ECF No. 27-2, PageID.172-73, 176.) Plaintiff also testified that Defendant ignored his complaints. (*Id.*) Defendant does not dispute that Plaintiff's medical condition in prison, which was later diagnosed as a perforated bowel, (ECF No. 27-6, PageID.211-12), presented objectively a "substantial risk of serious harm" to Plaintiff. *Miller*, 408 F.3d at 812-13.

"[S]elf-serving testimony" which is "blatantly and demonstrably false," *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020), and "[c]onclusory statements unadorned with supporting facts," *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020), cannot create genuine issues of material fact. Fed. R. Civ. P. 56(a). However, given that Plaintiff in his deposition unambiguously identified Defendant as an individual who was informed of Plaintiff's pain, and consequently of a serious medical condition; and that Plaintiff testified explicitly that Defendant ignored these "at least two or three" (or "over five") complaints, (ECF No. 27-2, PageID.172-73, 176), the court cannot conclude that there

---

[2] It bears mention that the adjective "acute" was language used by Defendant's counsel, not by Plaintiff. (*See* ECF No. 27-2, PageID.176.)

are no genuine issues of material fact in this case. Despite the numerous sources of evidence favoring Defendant, drawing all reasonable inferences in Plaintiff's favor, as the court must do at the summary judgment stage, *Moran*, 788 F.3d at 204, Plaintiff's statements are not "blatantly and demonstrably false" or "[c]onclusory," equivalent to a bare legal conclusion.³ *See Davis*, 951 F.3d at 750; *Viet*, 951 F.3d at 823. A reasonable finder of fact could conclude, after hearing Plaintiff's testimony, that he did in fact inform Defendant prior to August 20, 2018, of serious pain and the need for medical attention. *Anderson*, 477 U.S. at 248. Whether Plaintiff has provided credible testimony is a question of fact that a jury, not the court, must resolve. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

---

³ Defendant also cites the Supreme Court decision *Scott v. Harris* for the position that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." (ECF No. 31, PageID.310.) However, *Scott* involved a factual dispute over a police car chase that was recorded on video. 550 U.S. 372, 378-80 (2007). The Court noted that, under the plaintiff's version of events, "one [got] the impression that [he], rather than fleeing from police, was attempting to pass his driving test." *Id.* at 378-79. By contrast, undisputed video evidence proved that the events "more closely resemble[d] a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." *Id.* at 380. Defendant has not produced uncontested video evidence firmly disproving Plaintiff's claim that he complained to Defendant numerous times of "acute" abdominal pain. (ECF No. 27-2, PageID.172-73, 176.) In addition, the evidence Defendant has produced does not reach the high bar of demonstrating Plaintiff's testimony is "blatantly" false, and *Scott*'s holding is not helpful here. 550 U.S. at 380. The medical records do lean considerably in *Scott*'s direction, but are not so convincing as to be the equivalent of recorded audio and/or video proof.

The sole basis for Defendant's motion as to the subjective element of deliberate indifference is that he was not informed or involved in Plaintiff's serious medical condition beyond "providing approval for Plaintiff's transfer to [the hospital]" the morning of August 20, 2018. (ECF No. 27, PageID.158.) Because there remain issues of fact as to whether Plaintiff informed Defendant numerous times of his serious medical condition prior to August 20, 2018, and Defendant ignored Plaintiff's complaints, the court will deny the motion for summary judgment as to this issue.

### B. Clearly Established Right

Defendant also argues that he did not violate a "clearly established right possessed by Plaintiff." (ECF No. 27, PageID.161.) Like his arguments regarding the existence of a constitutional violation, the sole basis for Defendant's motion as to the existence of clearly established right is that "[his] only involvement in Plaintiff's medical care was on August 20, 2018 at [4:04 a.m.] when the request for [Plaintiff's] transfer [to the hospital] was made to [Defendant]." (*Id.*) Defendant explains that his "only opportunity to impact Plaintiff's rights was to approve his transfer to [the hospital] at [4:04 a.m.] which was promptly completed." (*Id.*)

As described above, there remain genuine issues of fact as to whether Plaintiff notified Defendant several times of a serious medical condition and Defendant ignored Plaintiff's complaints. Defendant does not argue that he is entitled to qualified immunity for a claim under the Eighth Amendment if he ignored numerous prisoner complaints of "acute abdominal pain" possibly indicating the presence of a condition necessitating invasive surgery. (ECF No. 27-2, PageID.172-73, 176; ECF No. 27-6, PageID.211-12.) Because the factual basis of Defendant's motion for summary judgment remains subject

to a dispute that must be resolved by a jury, the court cannot conclude as a matter of law that Defendant is entitled to qualified immunity. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (holding that a court must, when determining whether a right is "clearly established," "draw[] inferences in favor of the nonmovant"); *accord Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016). Thus, the motion for summary judgment will be denied.

## IV. CONCLUSION

There remain genuine issues of fact as to whether Defendant was verbally informed of Plaintiff's medical condition before Plaintiff was transported to a hospital the morning of August 20, 2018. Despite the weighty evidence in support of Defendant's position, and despite the many internal and external contradictions in Plaintiff's factual presentation, summary judgment is not warranted. Accordingly,

IT IS ORDERED that Defendant's "Motion for Summary Judgment" (ECF No. 27) is DENIED.

                                                s/Robert H. Cleland             /
                                                ROBERT H. CLELAND
                                                UNITED STATES DISTRICT JUDGE

Dated: June 7, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 7, 2021, by electronic and/or ordinary mail.

                                                s/Lisa Wagner                /
                                                Case Manager and Deputy Clerk
                                                (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-10238.WEST.MotionforSummaryJudgment.RMK.RHC.2.docx